IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KEITH TUCKER, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. PX-15-1844 |
| | * | |
| AMERICAN RESIDENTIAL SERVICES, LLC, *et al.*, | * | |
| Defendant(s). | * | |

******

**MEMORANDUM OPINION**

Pending before the Court is a motion for summary judgment filed by Defendant American Residential Services, LLC ("ARS"). ECF No. 38. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, ARS' motion for summary judgment is GRANTED in part and DENIED in part.

**I.   Background**

The following facts are undisputed, unless otherwise indicated. Plaintiffs Keith Tucker and Linda Tucker ("Plaintiffs") reside at 4922 Ridgeview Lane, Bowie, Maryland, 20715 (the "Property") with their three minor children. ECF No. 2. The Property, which was constructed in 1967, contains materials known to be hazardous today, including asbestos. ECF No. 2. Defendant American Residential Services, LLC (ARS) is a Tennessee corporation working in "repair and improvement of existing homes in the state of Maryland." *Id.*; ECF Nos. 1 & 7.

On or about October 13, 2011, Plaintiffs contracted with ARS to perform work in connection with Plaintiffs' kitchen renovation project. ECF Nos. 38 at 2, 38-3, 40 at 1.

1

Specifically, Plaintiffs hired ARS to replace a damaged sewer line under the concrete slab floor of the Property ("the Project"). *See* ECF No. 38-3 & 40 at 1–2. ARS was referred to Plaintiffs by Blue Dot of Maryland, ARS' sister company, with whom Plaintiffs had a "long standing" relationship. ECF Nos. 40-1 at 2; *see also* Dep. of Keith Tucker ("K. Tucker Dep."), ECF No. 38-4 at 75–76.

ARS was scheduled to begin work on October 19, 2011. When ARS arrived that day, Plaintiffs informed ARS that they had recently learned that the kitchen floor tiles contained asbestos, requiring abatement and removal before ARS could begin work on the Project. K. Tucker Dep., ECF No. 38-4 at 102–06. As part of the asbestos abatement process, plastic sheeting and barriers were set up throughout the house to prevent contamination. *See id.* at 112, 121–22. These barriers remained in place throughout ARS' work on the Project. *Id.*

On October 27, 2011, ARS returned to the Property to start work by jackhammering through the concrete kitchen floor on which the asbestos tiles had been recently removed. K. Tucker Dep., ECF No. 38-4 at 132. Before October 27, Plaintiffs contend that they repeatedly warned ARS that the Property's HVAC air ducts, located in the kitchen subfloor, likely contained asbestos fibers. *Id.* at 126; *see also id.* at 14, 103. Plaintiffs did not know the precise location of the air ducts, nor did ARS or Plaintiffs attempt to map out the air ducts' location relative to the areas in which ARS would begin work. *Id.* at 126–27; Dep. of Linda Tucker ("L. Tucker Dep."), ECF No. 38-5 at 38–39. Shortly after, ARS began demolition, jackhammering through the concrete subfloor, the Property's water supply line, and the air ducts. K. Tucker Dep., ECF No. 38-4 at 122, 146; *see also* ECF No. 38-1 at 4–5. The demolition produced significant dust.

Given that ARS had breached the air ducts which were believed to contain asbestos fibers, Plaintiffs grew afraid that the demolition generated potentially hazardous levels of airborne asbestos. *Id.* Plaintiffs and ARS thereafter disagreed on how to move forward with the Project. Plaintiffs repeatedly expressed their concerns to different ARS employees about possible asbestos exposure. ARS, in response, contracted with Paul Davis Restoration in November of 2011 to inspect the Property and prepare a report. ECF No. 2 at ¶¶ 39–40. On November 8, Allen Owens, the president of Paul Davis Restoration, visited the Property. *See* L. Tucker Interrogs., ECF No. 38-6 at ¶ 10. Upon viewing the damage and learning the pierced air ducts contained asbestos fibers, Owens instructed Plaintiffs to vacate the house until the construction site was tested and cleaned. *Id.*

Paul Davis Restoration also conducted two asbestos detection tests at the Property. The first test was inconclusive. *Id.* The second test, performed on November 10, "did not detect airborne asbestos fibers above current EPA re-occupancy level[s]." ECF No. 40-4 at 2. On November 15, Paul Davis Restoration issued a report confirming that the Property was safe, and Plaintiffs returned to the Property. ECF No. 40-4; L. Tucker Interrogs., ECF No. 38-6 at ¶ 10. On December 1, 2011, construction at the property resumed. ARS repaired the punctured water line and air ducts, and poured a new concrete kitchen floor. Plaintiffs remained displeased with ARS, and communicated their dissatisfaction to ARS. ARS then left the project site with all tools and equipment, and did not return or respond to Plaintiffs' communications. K. Tucker Dep., ECF No. 38-4 at 36. Apart from an initial deposit of $3,727, the Tuckers did not pay ARS for any of the work completed at the Property, nor did ARS request full payment. *See id.* at 73; L. Tucker Dep., ECF No. 38-5 at 11–12; ECF No. 38-1 at 3.

Plaintiffs maintain that the work under the Contract has not been completed. K. Tucker Dep., ECF No. 38-4 at 36; *see also* L. Tucker Interrogs., ECF No. 38-6 at ¶¶ 9 & 11. On October 27, 2014, Plaintiffs filed suit against ARS[1] in the Circuit Court for Prince George's County, alleging claims for breach of contract, battery, intentional infliction of emotional distress, loss of consortium, and violation of § 13-303 the Maryland Consumer Protection Act. ECF No. 2. Notably, Plaintiffs did not bring a negligence claim against ARS.

ARS removed the action to this Court on June 23, 2015, within thirty days of service of the Complaint, and answered. ECF No. 1 & 3. Discovery commenced on July 1, 2015, and after multiple extensions jointly requested by the parties, concluded two years later. *See* ECF Nos. 13, 14, 16, 17, 28, 29. ARS then filed a motion for summary judgment on all counts on August 18, 2017, which the Plaintiffs timely opposed. ECF Nos. 38 & 40.

ARS argues that summary judgment in its favor is warranted because the parties contractually agreed to a one-year limitation for all claims arising under the Contract. ECF No. 38. In the alternative, ARS argues that Plaintiffs cannot show that ARS misrepresented their services, or that ARS' conduct battery or intentional infliction of emotional distress. *Id.* Finally, ARS argues that to the extent any of Plaintiffs' claims survive, the Contract limits damages to the amount Plaintiffs paid for the work, $3,727. *Id.* The Court addresses each argument in turn.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

---

[1] Plaintiffs incorrectly named ARS twice in the Complaint, listing it as both a Maryland corporation and a Tennessee corporation. ARS is a privately-held Tennessee Corporation. *See* ECF Nos. 3 & 4.

current Rule 56(a)).  The party moving for summary judgment bears the burden of demonstrating the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the non-moving party, summary judgment must be denied.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The facts, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).  The opposing party cannot rest on the mere allegations or denials in their pleadings but instead must, by affidavit or other evidentiary showing, point to facts that give rise to a material issue in dispute.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 252.

### III. Analysis

#### a. Contractual Limitation; Breach-of-Contract (Count I)

ARS moves for summary judgment on all claims because, according to ARS, the Contract includes an express one-year limitation term for bringing any claim against ARS, and thus Plaintiffs' October 27, 2014 initiation of suit was untimely.  ECF No. 38-1.  Plaintiffs argue that the Contract term does not bar their claims because the one-year period begins to run only after "all work" under the Contract was completed, which never occurred, and even if the work was completed, the term is unconscionable and unenforceable.  *See* ECF No. 40.

The pertinent contract provision reads, "no legal action and or suit can be brought against ARS after one (1) year subsequent to the completion of all work under this Contract."  ECF No. 38-3.  "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed."  *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985).

5

Here, the Contract's term clearly and unambiguously states that the one-year limitation takes affect only after *all* work is completed under the Contract. *See* ECF No. 38-3; *Subsequent*, Black's Law Dictionary (10th ed. 2014). ARS does not point the Court to any evidence that "all work" under the Contract has been completed. Rather, the evidence construed most favorably to Plaintiffs shows otherwise. Final payment from Plaintiffs to ARS was never rendered, and ARS "never reached out to [Plaintiffs] to negotiate the closure of work or anything else." *See* ECF No. 40-1 at 4; 40-4 at ¶ 7; K. Tucker Dep., ECF No. 38-4 at 35–36, 66; L. Tucker Dep., ECF No. 38-5 at 110, 134–36; L. Tucker Interrogatories, ECF No. 39-6 at 4. Summary judgment in favor of ARS is thus inappropriate.

Because the Contract provision has not, as a matter of law, been triggered, the Court applies Maryland's general three-year statute of limitations for civil actions. *See* Md. Code Ann., Cts & Jud. Proc. § 5–101. Plaintiffs filed this action on October 27, 2014, exactly three years after ARS first damaged the Property on or after October 27, 2011. Further, because ARS does not seek summary judgment on the merits of Plaintiffs' breach-of-contract claim, and the record reflects genuine issues of disputed facts regarding ARS's performance under the contract, the motion for summary judgment as to Count I is DENIED.

### b. Battery (Count II)

Turning to Plaintiffs' battery claim, Plaintiffs theory of liability rests on ARS' intentionally exposing Plaintiffs to asbestos through generating construction dust. ECF No. 2 at ¶¶ 56–60. For Plaintiffs to succeed on such a claim, they must demonstrate that: (1) ARS intended a harmful or offensive contact with Plaintiffs, to which Plaintiffs did not consent; and (2) ARS's conduct directly or indirectly resulted in harmful contact to Plaintiffs. *See* Restatement (Second) of Torts, § 13; *see also Nelson v. Carroll*, 355 Md. 593, 600–01 (1999).

6

ARS focuses the Court on the absence of evidence suggesting that any potential exposure was *intentional* on ARS part. ECF No. 38-1 at 12–13. Viewing the evidence in the light most favorable to Plaintiffs, the Court must agree.

To establish that a defendant possessed the requisite intent for the tort of battery, plaintiffs must show that the defendant possessed "not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact or an apprehension of such contact." *Smith v. Kennedy Krieger Institute*, No. 2241, 2017 WL 1076481, at *30 (Md. Ct. Spec. App. Mar. 22, 2017) (quoting *Nelson*, 355 Md. at 602–03). Accidental, reckless, or wanton conduct, if lacking the requisite intent "to invade the other person's legally protected interests," will not support the intent element necessary for battery. *Id.*; *see also Nelson*, 355 Md. at 602–03.

Viewing the evidence in the light most favorable to Plaintiffs, no evidence has been generated to support an inference that ARS intended to cause a harmful or offensive contact. Although ARS punctured the Property's air ducts, no evidence suggests, for example, that ARS knew or should have known in advance that its demolition work would release airborne asbestos. *See* K. Tucker Dep., ECF No. 38-4 at 132 ("No, I do not think they intended to jackhammer into the air ducts."); L. Tucker Dep., ECF No. 39-5 at 39 ("Q: is it your belief that ARS intentionally penetrated the duct work? A: No, I do not believe it was intention[al]."). Rather, the evidence at best shows ARS' work to be negligent. *See* L. Tucker Dep., ECF No. 39-5 at 39 ("Q: is it your belief that ARS intended to expose you to asbestos? A: "I think they were incompetent, but not intentional.").

Moreover, the mere theoretical possibility that ARS' demolition work may release an unspecified amount of a possibly harmful substance, standing alone, cannot support an inference

7

of intent.  Nor can the fact of actual asbestos exposure, if proven, permit the inference that ARS intended such exposure without some evidence independently supporting such intent.  *See generally* ECF No. 40; *see Hendrix v. Burns*, 205 Md. App. 1, 23 (2012) (granting summary judgment on a battery claim where the defendant, driving drunk, ran into the plaintiff at a high rate of speed, because there was no evidence showing that the driver *intended* to strike the plaintiff); *Nelson*, 355 Md. at 600; *Kennedy Krieger*, 2017 WL 1076481, at *4–*6, *30–*31 (affirming summary judgment for defendant on battery claim where defendant Kennedy Krieger Institute (KKI) knew lead paint abatement study house contained toxic lead paint, and study participant tested positive for lead exposure).  ARS's motion for summary judgment for the Tucker's battery claim, therefore, must be granted.[2]

### c. Intentional Infliction of Emotional Distress (Count III)

To support an intentional infliction of emotional distress (IIED) claim, Plaintiffs must show that ARS intentionally or recklessly engaged "extreme or outrageous" conduct which caused Plaintiffs severe emotional distress.  *Harris v. Jones,* 281 Md. 560, 566 (1977).  In Maryland, IIED claims are disfavored, and are reserved only for cases involving atrocious or opprobrious behavior considered "utterly intolerable in a civilized community."  Restatement (Second) of Torts § 46, cmt. d (1965) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."); *see also Betkoff v. Bank of America, N.A.*, No. CCB-12-1998, 2012 WL 4960099, at *5 *(D. Md. Oct. 15, 2012) (citing *Snyder v. Phelps*, 580 F.3d 206, 231) (4th Cir. 2009) (Shedd, J., concurring)).  This is not that case.

---

[2] Because the Court finds the intent element of this claim wholly lacking, and Plaintiffs must put forward evidence on all elements to survive summary judgment, *see Nelson v. Carroll*, 355 Md. 593, 600–01 (1999), the Court need not reach whether sufficient evidence demonstrates that Plaintiffs suffered a harmful or offensive contact.

No record evidence demonstrates that Keith Tucker suffered emotional distress, and so summary judgment is granted in favor of ARS as to him.[3] Linda Tucker avers that she has "endure[d] mental anguish and extreme stress as a result of her fear of the potential consequences of the [a]sbestos exposure." ECF No. 2 at ¶ 52; *see also* ECF No. 40-8 at 10–11, 19 ("[T]hese events cause mental anguish and extreme stress because of Mrs. Tucker's fear of potential consequences of asbestos exposure."). Specifically, with respect to emotional distress premised on a fear of contracting a latent disease, the Maryland Court of Appeals most recently articulated in *Exxon Corp. v. Albright*, 433 Md. 303 (2013) that Linda Tucker must demonstrate: (1) she was actually exposed to a toxic substance resulting from defendant's tortious conduct; (2) that exposure led her to fear, objectively and reasonably, that she would contract a disease; and (3) as a result of the objective and reasonable fear, she manifested a physical injury — such as depression, insomnia, or anxiety — capable of objective determination. *See Exxon Mobil Corp v. Albright*, 433 Md. 303, 350–76 (2013), *modified on other grounds*, 433 Md. 502 (2013), *cert. denied*, 134 S.Ct. 648 (2013); *see also Exxon Mobil v. Ford*, 433 Md. 426, 464–72 (2013); *accord Faya v. Amaraz*, 329 Md. 435, 451–60 (1993).[4] Because Linda Tucker's claim centers on her emotional distress allegedly caused by her exposure to asbestos and persistent fear of asbestos-related disease, the Court is guided by *Exxon*. *Exxon*, 433 Md. at 354.

Viewing the evidence in the light most favorable to Plaintiffs, no material facts support Linda Tucker's actual exposure to asbestos, despite Plaintiffs' conclusory allegations otherwise. It is undisputed that in connection with earlier asbestos abatement efforts, the kitchen was sealed

---

[3] The Complaint does not specify whether the IIED claim is brought on behalf of each Plaintiff (ECF Nos. 2 at ¶¶ 61-66) and so the Court addresses the viability of this claim as to both Keith and Linda Tucker.

[4] *Exxon* is in accord with most jurisdictions, which require both actual exposure and objectively reasonable fear to recover emotional damages. *See, e.g. Watkins v. Fibreboard Corp.*, 994 F.2d 253, 258–60 (5th Cir. 1993); *Atkins v. Ferro Corp.*, 534 F. Supp. 2d 662, 667 (M.D. La. 2008); *Meyer v. Lockformer Co.*, No. 02-C-2672, 2005 WL 1869656, at *4 (N.D. Ill. Aug. 2, 2005); *Salazar v. American Sterilizer Co.*, 5 P.3d 357, 369 (Colo. App. 2000); *Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 13–15 (Kan. Ct. App. 1998).

off from the rest of the house, and remained sealed for the duration of the kitchen remodeling. K. Tucker Dep., ECF No. 38-4 at 112, 121–22. Further, no evidence demonstrates that any air from the punctured duct circulated throughout the Plaintiffs' home, or that Linda Tucker was otherwise exposed. *See* K. Tucker Dep. 38-4 at 126; L. Tucker Dep., ECF No. 38-5 at 56. In fact, the two test results for airborne asbestos were inconclusive and negative respectively. ECF Nos. 40-4 at ¶ 5 & 40-6. That Linda Tucker doubts the veracity of these results does not amount to *evidence* of actual exposure sufficient to support a claim for IIED. *See* L. Tucker Dep., ECF No. 38-5 at 31–33; *see Exxon*, 433 Md. at 356–57.

Alternatively, even if the Court most liberally construed ARS' conduct as risking possible exposure to asbestos fibers, the exposure lasted, at its longest, 11 days — from October 27th through November 8th. Given that actual exposure is speculative at best, no reasonable fact finder could find this case so "extreme and outrageous" as to be "utterly intolerable in a civilized society." *See* Restatement (Second) of Torts, § 46, cmt. d; *Harris v. Jones,* 281 Md. 560, 566 (1977); *accord Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 798, 804–05 (E.D. Va. 2003) (noting "where the wrongdoing is not specifically directed at plaintiff, fear and anxiety of contracting cancer from exposure to asbestos . . . is not enough to present a viable claim for intentional infliction of emotional distress even where certain physical manifestations occur."); *Morrison v. Williams*, No. 98-2408, 1998 WL 717423, at *2 (E.D. Pa. 1998) (same); *compare Watkins v. Fibreboard Corp.*, 994 F.2d 253, 259 (5th Cir. 1993) (noting that "most of the cases that have permitted recovery, the plaintiffs had *worked* as asbestos insulators and pipefitters.") (emphasis in original); *In re Moorenovich*, 634 F. Supp. 634, 636–37 (D. Me. 1986) (allowing plaintiff's mental distress claim to go forward based on "Maine's liberal recognition of an independent cause of action for emotional distress," and plaintiffs "prolonged exposure to

asbestos" at work and evidence that "co-workers are dying at a higher than normal rate from asbestos-related cancer"); *Geradi v. Nuclear Utility Services, Inc.*, 566 N.Y.S.2d 1002, 1003 (N. Y. Sup. Ct. 1991) (denying a motion to dismiss where plaintiffs worked in ""a large cloud of dust containing asbestos" with equipment "composed, in substantial part, of asbestos"). ARS's motion for summary judgment on Plaintiff Linda Tucker's IIED claim is thus GRANTED.

### d. Loss of Consortium (Count IV)

Keith and Linda Tucker also plead loss of consortium as a separate cause of action. ECF No. 2 at ¶ 67–69. In Maryland, loss of consortium is "derivative of the injured spouse's [c]laim for personal injury" and therefore dependent on "the individual action of the physically injured spouse." *Rozinsky v. Assurance Co. of America*, No. RBD-15-02408, 2016 WL 927147, at *2–*3 (quoting *Oaks v. Connors*, 339 Md. 24, 34 (1995)). The Tuckers' claim, therefore, is only viable to the extent that a personal injury claim survives. *Id.* (holding damages for loss of consortium can proceed only in an underlying action for personal injury); *see also Nyhart v. PNC Bank, N.A.*, No. PX-15-2241, 2016 WL 6996744, at *5 (D. Md. Nov. 30, 2016) ("Generally, damages for emotional distress and loss of consortium are not available in breach of contract cases."). Because the Court finds that ARS is entitled to summary judgment on the battery and IIED claims, summary judgment must be granted on Plaintiffs' loss of consortium claim as well.

### e. Violation of the Maryland Consumer Protection Act (Count V)

As to Count V of Plaintiffs Complaint asserting that ARS's communications violated § 13-303 of the Maryland Consume Protection Act ("MCPA"), ARS contends that summary judgment is warranted because, "Plaintiffs . . . could not point to a single misstatement or omission that caused them to hire Defendant." ECF No. 38-1 at 16. However, § 13-303 violations are not limited only to false statements or omissions made in connection with entering

11

into a service contract of this kind. Violations of § 13-303 are supported whenever a commercial entity misrepresents the quality and availability of its services, its expertise, or pertinent affiliations, and such misrepresentations "substantially induce[] the consumer's choice." Md. Code. Ann. Com. Law, § 13-303; *see, e.g. Currie v. Wells Fargo Bank*, 950 F. Supp. 2d 788, 797–98 (D. Md. 2013) (applying the MCPA to a defendant's misrepresentations regarding loan modification in an existing mortgagor-mortgagee relationship); *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 531–32 (D. Md. 2011).

That said, although Plaintiffs argue that ARS made a "host of omissions and mis-statements", including statements related to "permits for the project," "abatement efforts", and corporate affiliations, ECF No. 40-1 at 14, Plaintiffs point to no *evidence* supporting that ARS ever made these assertions. Plaintiffs do not, for example, identify evidence supporting when or by whom *any* of the alleged misstatements were made, the context or content of the misrepresentations, or that such statements "substantially induce[d]" Plaintiffs' choices. Md. Code. Ann. Com. Law, § 13-303. Accordingly, without any evidence that ARS made any such misrepresentations, summary judgment in ARS' favor is warranted. *See Spaulding v.* Wells *Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013); *Currie*, 950 F. Supp. 2d at 798; *Agomuoh v. PNC Financial Services Group*, No. GJH-16-1939, 2017 WL 657428, at *12 (D. Md. Feb. 16, 2017); *Willis v. Green Tree Servicing, LLC*, 2015 WL 1137681, at *5 (D. Md. Mar. 12, 2015); *compare Barry v. EMC Mortg. Corp.*, No. DKC-10-3120, 2012 WL 3595153, at *8 (D. Md. Aug. 17, 2012) (denying summary judgment where the defendant conceded that a misrepresentation was made and the record showed that plaintiffs were assessed penalties because of the misrepresentation, lost credit opportunities, and suffered emotional distress.). In this case, despite over two years of discovery, Plaintiffs do not point to *any* facts supporting their

claims regarding ARS' misrepresentations. Nor has any evidence been generated that any such misrepresentations induced or effected Plaintiffs decisions in a meaningful way. Summary judgment must be granted.

### f. Limits on Damages

Finally, ARS moves for summary judgment on damages, arguing that the Contract expressly limits damages arising from any claims to "the amount actually received by ARS from the Customer." ECF No. 38-3 at 2. ARS argues that this provision limits Plaintiffs' recovery to $3,727, the amount actually received by ARS for their work at the Property. ECF No. 38-1 at 11–12. Plaintiffs respond that the Court should exercise its discretion on the "facts and circumstances" of the case to not enforce this contract term. ECF No. 40-1 at 7.

In general, Maryland honors parties' freedom to contract, including agreements that limit future potential liability or damages. *See Wolf v. Ford*, 335 Md. 525 (1994) (enforcing a clause that limited the broker's liability for all claims except those arising from gross negligence or willful misconduct); *Baker v. Roy H. Haas Associates, Inc.*, 97 Md. App. 371 (1993) (enforcing a liability clause that limited the home inspector's liability for ordinary negligence to the costs of inspection); *Schrier v. Beltway Alarm Co.*, 73 Md. App 281, 292 (1987) (upholding a provision limiting the company's liability to "six monthly payments or Two Hundred Fifty Dollars ($250.00) whoever is the lesser."). Where the parties maintain equal bargaining power, and the plaintiff is or should have been aware of the limiting term at the time the agreement was consummated, "[i]t is quite possible for the parties expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and [defendant] shall not be liable for consequences of conduct which would otherwise be negligent." *Winterstein v. Wilcom*, 16 Md. App. 130, 135 (1972).

Here, it is undisputed that the pertinent contract term is unambiguous and featured prominently on the Contract in regular font. *See* ECF No. 38-3. Further, Plaintiffs, who are both well-educated adults, admit that they had an opportunity to read the Contract in advance, and by choice did not read it carefully. K. Tucker Dep., ECF No. 38-4 at 33–36, 66–67; L. Tucker Dep., ECF No. 38-5 at 56–58; *see Merit Music Service, Inc. v. Sonneborn*, 245 Md. 213, 221–22 (1967) ("[T]he law presumes that a person knows the content of a document that he executes and understands at least the literal meaning of its terms."). In such circumstances, the Court is reluctant to void a contract provision of this kind, "in keeping with [Maryland courts'] general reluctance to invoke the nebulous public interest to disturb private contracts." *Wolf*, 335 Md. at 532; *see also Md Nat'l Cap. P. & P. v. Wash. Nat'l Arena*, 282 Md. 588, 606 (1978) ("Fearing the disruptive effect that invocation of the highly elusive public policy principle would likely exert on the stability of commercial and contractual relations, Maryland courts have been hesitant to strike down voluntary bargains on public policy grounds."). Accordingly the Court will enforce such clauses *unless* the stated claim implicates "the more extreme forms of negligence – willful, wanton, reckless or gross" conduct, or when the contract terms are clearly against the public interest. *See, e.g. id.* at 531–32; *Anne Arundel Cty. v. Hartford Acc. & Indem. Co.*, 329 Md. 677, 686 (1993) ("[I]t must be a very plain case to justify a court in holding a contract to be against public policy.") (quoting *Estate of Woods, Weeks & Co.*, 52 Md. 520, 536 (1879)).

Importantly, even though the Complaint references generally ARS' maintaining a "duty of good faith and fair dealing," breached by ARS' "reckless disregard" for the Plaintiffs' safety, the Complaint does not assert a negligence claim against ARS. *See* ECF No. 2 at ¶¶ 54–55. Had Plaintiffs pursued a negligence claim, arguably § 5-401 of the Maryland Code of Courts and

Judicial Procedure may have barred enforcement of the damages provision at issue. *See* Md. Code Ann, Cts. & Jud. Proc. § 5-401, *previously codified as* Md. Code. Ann, Cts & Jud. Proc. §5-305 (renumbered by Acts 1997, c. 14, § 9; eff. Apr. 8, 1997); *see Hartford Acc. & Indem. Co.*, 329 Md. at 688 ("[A]s the relationship between a statutorily-based public policy and a provision in a contract grows more attenuated, this Court's reluctance to invalidate the contractual provision on public policy grounds increases."). The only surviving claim is for breach of contract based on ARS' *incomplete* performance, not any alleged "extreme negligence." *See* Wolf, 335 Md. at 531; ECF No. 2 at ¶ 55. ("The items in the scope of [the Contract] were not performed."). Because the breach of contract claim does not encompass those rare exceptions where such clauses may be voided as against public policy, this Court finds the provision valid. Summary judgment is thus appropriate, and Plaintiffs' recovery on the breach of contract claim is limited to $3,727 as a matter of law.

## IV. Conclusion

For the foregoing reasons, ARS' motion for summary judgment, ECF No. 38, is GRANTED as to all claims apart from Plaintiffs' breach of contract claim (Count I). Further, summary judgment is GRANTED on damages, limiting recovery on the breach of contract claim to $3,797. A separate Order follows.

| | |
|---|---|
| 3/26/2018 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |

15